**In re JOHN DOE, a.k.a. Gregory S., Alleged to be Mentally Ill.**

[Cite as *In re John Doe,* 150 Ohio App.3d 532, 2002-Ohio-5210.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 153.

Decided Sept. 26, 2002.

Diane L. Chermely–Tanner and John B. Juhasz, for appellant.

Samuel G. Amendolara, for appellee.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Respondent-appellant John Doe appeals from the judgment of the Mahoning County Court of Common Pleas, Probate Division, overruling Doe's objections to the magistrate's decision concerning the timeliness of his hearing to determine whether he was a mentally ill person subject to hospitalization pursuant to R.C. Chapter 5122. In order to resolve this appeal, we must ascertain when, according to statute, a trial court must hold a hearing to determine whether a person who is being involuntarily detained is a mentally ill

person subject to hospitalization and whether the trial court held that hearing within the required time in this case. Because we conclude that the trial court failed to hold a timely hearing in accordance with R.C. 5122.141(B), we reverse its judgment and order that Doe be discharged from his involuntary commitment.

{¶ 2} Doe was involuntarily admitted to Northside Medical Center on March 27, 2000. On March 29, 2000, Dr. Ralph Walton filed an affidavit of mental illness with the probate court. On April 3, 2000, the matter came to a hearing. At that hearing, the probate court appointed counsel for Doe and continued the matter until April 7, 2000. That day, the matter was heard before a magistrate who found that Doe was detained on March 29, 2000, and that there was clear and convincing evidence that he was mentally ill and subject to hospitalization.

{¶ 3} Doe filed objections to the magistrate's decision with the trial court, arguing that his commitment was improper because the hearing was not held within the time specified by R.C. 5122.141(B). The trial court overruled Doe's objections fifteen months later, finding that the magistrate had correctly calculated the time limitation found in R.C. 5122.141(B). Doe timely appealed from the trial court's judgment.

{¶ 4} Doe's sole assignment of error on appeal argues:

{¶ 5} "The decision of the magistrate, approved by the trial court, denied appellant due process of law, equal protection of the laws, and the administration of justice without denial or delay by failing to discharge appellant when the initial hearing was not held within the time required by law. U.S. Const. Amend. XIV; Ohio Const. Art. [I], Secs. 1, 2, and 16."

{¶ 6} In his assignment of error, Doe argues that the trial court erred when it adopted the magistrate's decision because the hearing adjudicating him to be mentally ill was not held within the time required by R.C. 5122.141(B). He also argues that the trial court's construction of the statutory framework is unconstitutional. We hold that the trial court's construction of R.C. 5122.10 and 5122.141(B) violates the plain language of those statutes and that it did not hold a timely hearing. Because we conclude that the trial court misconstrued the plain language of those statutes, we need not address whether the trial court's construction was unconstitutional.

{¶ 7} A trial court's judgment adopting, rejecting, or modifying a magistrate's decision will be reversed on appeal only for an abuse of discretion. *Conti v. Christoff*, 7th Dist. Nos. 99 CA 84 and 99 CA 327, 2001-Ohio-3421, at ¶ 22, 2001 WL 1199056. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. This court cannot substitute its judgment for that of the

trial court unless, after considering the totality of the circumstances, we determine that the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597.

{¶ 8} If a person is suspected of being a mentally ill person subject to hospitalization, R.C. Chapter 5122 provides two different procedures that may be used to accomplish an involuntary commitment of that person. The first procedure is an emergency hospitalization procedure pursuant to the guidelines found in R.C. 5122.10. *In re Miller* (1992), 63 Ohio St.3d 99, 101, 585 N.E.2d 396. The other procedure is a nonemergency hospitalization, which may be accomplished pursuant to the guidelines found in R.C. 5122.11. Id. The distinguishing factor between emergency and nonemergency involuntary commitment is the method by which the procedure is initiated. Id. In an emergency involuntary commitment, the person is taken into custody without a prior hearing and, after the person is taken into custody, an affidavit alleging that the person is mentally ill subject to hospitalization is filed in the trial court. Id. In contrast, a nonemergency involuntary commitment is initiated by the filing of an affidavit alleging facts to indicate probable cause to believe that the person is mentally ill subject to hospitalization. Id. This affidavit is filed before the person is taken into custody. Id.

{¶ 9} In this case, Dr. Walton testified that Doe was involuntarily admitted to the hospital on March 27, 2000. He did not file the affidavit alleging that Doe was a mentally ill person subject to hospitalization until March 29, 2000, after Doe had already been involuntarily hospitalized. Accordingly, Doe could have been involuntarily committed only pursuant to the procedures found in R.C. 5122.10.

{¶ 10} R.C. 5122.10 authorizes psychiatrists, clinical psychologists, and other specified personnel to take a person into custody if he or she has reason to believe both that the person is a mentally ill person subject to hospitalization as defined in R.C. 5122.01(B) and that the person represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination. If a person is taken into custody pursuant to R.C. 5122.10, that person "shall be examined by the staff of the hospital or agency within twenty-four hours after arrival at the hospital or agency." Id.

{¶ 11} R.C. 5122.10 specifically mandates:

{¶ 12} "After the examination, if the chief clinical officer of the hospital or agency believes that the person *is not* a mentally ill person subject to hospitalization by court order, the chief clinical officer *shall release or discharge the person immediately* unless a court has issued a temporary order of detention applicable to the person under section 5122.11 of the Revised Code. After the examination, if the chief clinical officer believes that the person *is* a mentally ill person subject to hospitalization by court order, the chief clinical officer *may detain the person for*

*not more than three court days following the day of the examination and during* *such period admit the person as a voluntary patient under section 5122.02 of the* *Revised Code or file an affidavit under section 5122.11 of the Revised Code. If* *neither action is taken* and a court has not otherwise issued a temporary order of detention applicable to the person under section 5122.11 of the Revised Code, the chief clinical officer *shall discharge the person at the end of the three-day period* unless the person has been sentenced to the department of rehabilitation and correction and has not been released from the person's sentence, in which case the person shall be returned to that department." (Emphasis added.) Id.

{¶ 13} If the chief clinical officer files an affidavit of mental illness under R.C. 5122.11, as Dr. Walton did in this case, then R.C. 5122.141 provides the procedure the court must follow to determine whether the person should be hospitalized. Pursuant to R.C. 5122.141(B), a hearing to determine whether the respondent is a mentally ill person subject to hospitalization by court order shall be conducted within five court days from the day on which the respondent is detained or an affidavit is filed, whichever occurs first. For good cause shown, the court may order a continuance of the hearing. Id. However, that continuance may be for no more than ten calendar days from the day on which the respondent is detained or on which an affidavit is filed, whichever occurs first. Id. "Failure to conduct the hearing within this time shall effect an immediate discharge of the respondent." Id.

{¶ 14} In this case, Doe was involuntarily admitted to the hospital on March 27, 2000. Walton filed his affidavit on March 29, 2000. The hearing before the magistrate was held on April 7, 2000, eleven days after Doe was involuntarily admitted to the hospital. In its judgment entry, the trial court stated, "[R.C. 5122.10] specifically allows the chief clinical officer of a mental health facility to detain a person as a 'voluntary patient' for not more than three days after permitting a 24 hour period to conduct a mental health examination." It then concluded that "the ten day period [found in R.C. 5122.141(B)] does not begin to run until after the expiration of both the 24 hour period and the 3 court days." Id. Accordingly, it found that the hearing was timely. Doe argues that the date he entered the hospital was the date he was "detained" for purposes of R.C. 5122.141 and the failure to conduct the hearing within the statutory time limits requires his immediate discharge.

{¶ 15} The trial court plainly erred in its interpretation of R.C. 5122.10 and 5122.141 for three reasons. The first error was the trial court's interpretation of the statutes embodied in its conclusion that R.C. 5122.10 allows the chief clinical officer "to detain a person as a 'voluntary patient' * * *." This is incorrect. As can be seen from the statute, after the initial twenty-four-hour examination period has passed, the hospital has three choices. It may (1) discharge the

patient because he is not a mentally ill person subject to hospitalization, (2) attempt to admit the person as a voluntary patient within three court days following the day of examination, or (3) file an affidavit of mental illness under R.C. 5122.11 within three court days following the day of examination. In order for a person to be admitted as a voluntary patient, that person must make a written application for voluntary admission. R.C. 5122.02(A). R.C. 5122.10 does not allow the chief clinical officer to "detain" someone as a "voluntary patient" for the three-day period. Rather, the statute gives the chief clinical officer three days to convince the patient to admit himself or herself as a voluntary patient.

{¶ 16} The second error was the trial court's construction of the statutory framework, that can be seen in the language it used to describe that framework. According to the trial court, R.C. 5122.10 allows the chief clinical officer "to detain a person as a 'voluntary patient' " and uses this as its basis for concluding that the ten-day period in which it must hold the R.C. 5122.141 hearing begins after the three-day period referred to in R.C. 5122.10 has elapsed. However, R.C. 5122.141(B) requires that the hearing be held "no more than ten days from the day on which the respondent is *detained* or on which an affidavit is filed, whichever occurs first." (Emphasis added.) Without question, the time a person is detained pending the chief clinical officer's decision pursuant to R.C. 5122.10 also counts as time a person is detained pursuant to R.C. 5122.141(B).

{¶ 17} The final error was the trial court's ignoring the rules of statutory construction when interpreting the statutes. When construing a statute, a court must give effect to the words used in the statute. *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 387 N.E.2d 1222. As noted above, R.C. 5122.141(B) provides that the hearing must be held within ten days of the date the person was detained or the affidavit was filed, whichever occurred first. According to the trial court's construction of the statute, a person is not "detained" for the purposes of R.C. 5122.141(B) until the chief clinical officer decides to file the affidavit. In other words, according to the trial court the date of detention and the date the affidavit is filed will always be the same. Obviously, if this were the case, then some of the language in R.C. 5122.141(B) would be superfluous. As the trial court's construction of R.C. Chapter 5122 would not give effect to every word in the statute, it cannot be the correct statutory construction.

{¶ 18} In conclusion, the plain language of R.C. 5122.141(B) requires that a trial court conduct a hearing to determine whether a person involuntarily detained pursuant to R.C. 5122.10 is a mentally ill person subject to hospitalization within ten days of the day upon which the person was detained. In this case, the trial court conducted that hearing eleven days after the person was detained. Accordingly, Doe's assignment of error is meritorious. The judgment of the trial

court is reversed, and we order Doe's immediate discharge from his involuntary commitment.

Judgment reversed.

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.